# CHARLESTON.

°

KANAWHA COAL CO. *v.* BALLARD & WELCH COAL CO. *et al.*

(BRANNON, JUDGE, *concurring*.)

Submitted February 11, 1897—Decided November 11, 1897.

1. CORPORATIONS—*Insolvent Corporations—Receiver.*

Where a corporation is insolvent, and is the lessee of a coal mine, and the said insolvent lessee is largely indebted to its lessor for royalty reserved in the lease, which is secured by a lien on the lease and personal property and appliances in use about the mine by the lessee, and several of the creditors of such lessee have proceeded by way of attachment, and are proceeding, to sieze and scatter the personal property belonging to said lessee, and to remove the rails from the tracks

and wire ropes from the drums, a court of equity, on proper application made by such lessor, will appoint a receiver to take charge of said property. (p. 728.)

2. CORPORATIONS—*Stockholders—Stockholder as Defendant.*

A stockholder of a corporation can not be regarded as answering for the corporation itself. In a special case, however, where there is an allegation that the directors fraudulently refused to attend to the interests of the corporation, a court of equity will, in its discretion, allow a stockholder to become a party defendant, for the purpose of protecting from unfounded and illegal claims against the company his own interest and the interest of such other stockholders as choose to join him in the defense. (p. 731.)

3. CORPORATIONS—*Stockholders.*

An individual stockholder is not, by reason of being a stockholder, a part owner of the property of the corporation, or entitled to act for it as its agent; but he stands as a stranger towards it, and may sue it and be sued by it and deal with it at arm's length. (p. 731.)

4. CORPORATIONS—*Receiver—Appointment of Receiver.*

In order to obtain the appointment of a receiver, the plaintiff must show—first, either that he has a clear right to the property itself, or that he has some lien upon it, or that the property constitutes a special fund, to which he has a right to resort for the satisfaction of his claim; and, secondly, that the possession of the property by the defendant was obtained by fraud, or that the property itself, or the income arising from it, is in danger of loss from the neglect, waste, misconduct, or insolvency of the defendant. (p. 732.)

5. EQUITY PRACTICE—*Commissioner's Report—Decree.*

Under section 7, chapter 8, Acts 1895, if a decree is entered on a commissioner's report before the term next after the term at which the same was filed, such decree is so entered at the risk of a party excepting and showing error within the time given by statute. (p. 734.)

Appeal from Circuit Court, Kanawha County.

Action by the Kanawha Coal Company against the Ballard & Welch Coal Company and others for an injunction and the appointment of a receiver. There was a decree for plaintiff, and defendants appeal.

*Affirmed.*

E. W. WILSON, for appellant.

BROWN, JACKSON & KNIGHT, for appellee.

ENGLISH, PRESIDENT.

On the 8th day of March, 1895, the Kanawha Coal Company, a corporation, presented its bill to the Circuit Court of Kanawha County praying an injunction against the Ballard & Welch Coal Company and others, to prevent them taking up the rails and moving the fixtures or otherwise disposing of the personal property upon the leased premises in the bill mentioned, or that might have been taken from said premises within thirty days next prior to that date, and also praying for a receiver of the defendant the Ballard & Welch Coal Company; and thereupon the court awarded the injunction prayed for, to take effect upon the complainant or some one for it executing a bond before the clerk of said court, with good security in the penalty of five hundred dollars, conditioned to pay all costs and damages which would be awarded in the event of said injunctions being dissolved, and the motion made for a receiver was set down for consideration and hearing on the 9th day of March, 1895.

On that day, on motion of the complainant, O. A. Veazey was appointed receiver of said Ballard & Welch Coal Company, and all of its assets and business; and said receiver was directed to take immediate charge of all the assets, business, and property, of every kind and description, belonging to said Ballard & Welch Coal Company, wheresoever the same might be found, and to collect all indebtedness due said company, keeping a strict account thereof, and to keep, care for, and preserve all of the other property of said company until further order of the court; and the defendants to the suit, having any other property of said company in their possession or under their control, were directed forthwith to turn the same over to said receiver, together with a statement of the claim under which they held the same, which claim they should have the right to present to and have passed upon by the commissioner to whom the cause was referred; and the said receiver was authorized to employ counsel and such necessary help as might be required for the full discharge of his duties in the premises.

By consent of complainant and defendant the Ballard & Welch Coal Company, the cause was referred to Joseph Ruffner, who was appointed a special commissioner for the

purpose to take, state, settle and report an account of the assets and liabilities of the defendant the Ballard & Welch Coal Company, showing to whom said company was indebted, the amount due each creditor, and the liens, if any, their priorities upon the property of said company, together with any other matter or things that to the commission may seem pertinent or any party, may require. These decrees were made in pursuance of the allegations of the bill filed by the Kanawha Coal Company, as before stated, in which said company claimed to be the owner in fee of a valuable coal property, situated on the Kanawha river, between Cabin creek and Paint creek, and alleged that, being so seised and possessed on the 26th of September, 1893, it demised the same to G. L. Welch, upon certain terms and conditions set forth in said lease; that on the 12th of September, 1894, said Welch, by apt and proper deed, in which the plaintiff united, transferred and assigned, with the consent of the plaintiff, all of the rights and benefits under said lease to the defendant the Ballard & Welch Coal Company, who also united in said deed, and assumed the covenants and agreements in said first deed contained on the part of said Welch; that, under said first deed, said G. L. Welch immediately took possession of said premises, and, upon the execution of said second deed, said Ballard & Welch Coal Company succeeded the said Welch, and took possession of said premises, and had until the last few days been operating the same as coal property, mining and shipping coal therefrom; that, during the possession under said lease, the said lessee and assignee placed upon said premises sundry items of property liable to distraint for rent, as well as other items of property which in their nature and character became part of the freehold; that there was on said premises, until within thirty days next preceeding that date, the following property, to wit, blacksmith shop and tools, pump boat, fuel boat, wire rope, three houses for miners, stable, seven mules, two horses, a lot of T rails, side tracks, fifty-six mine cars, crap on tipple, wagons and harness, powder house, office furniture, a lot of ropes and lines, miners' tools, window sash, roofing iron, hay and corn, household and kitchen furniture, one cow, six set of car wheels, a lot of grate bars, a stock of goods, wares, and merchandise, lot of lumber and timber,

coal scales, screen bars, and other tools and appliances, and property used in and about said coal plant, a considerable part of which was on said premises from the date of said lease, and is the property of complainant, upon all of which property plaintiff had a lien duly recorded, which lien was still in force; that, by the terms of said lease, the plaintiff is entitled to a minimum royalty of rent on said premises of three thousand dollars; that on January 1, 1895, there remained unpaid of rents a balance of one thousand six hundred and sixty-two dollars and forty-five cents, payable in thirty days from that date, upon which there was to be credited, when collected, the sum of five hundred and seventy-seven dollars and seventy-three cents, on account of an order given by the said defendant company upon the cashier of the C. & O. Railroad Company; that, since said 1st of January, the royalties had accrued, amounting to five hundred and fifty dollars additional, none of which had been paid; that said Ballard & Welch Coal Company had become hopelessly insolvent, and its creditors were attaching and levying upon the property of said company upon said premises, and removing the same, and were threatening to tear loose from said premises the rails, wire ropes attached to the drums, connected with the incline and tipple on said premises, and other fixtures attached to said leasehold estate, and, unless restrained, will execute said threat, and greatly damage said leasehold estate, as well as said property, and destroy the value thereof.

The plaintiff then proceeds to designate several creditors of said defendant company who have sued out attachments for various amounts, and levied them upon property on said leased premises, and others who have obtained judgments and levied executions upon said property, by reason of which the property of said company would be scattered, sacrificed, and dissipated to such an extent that it will have nothing out of which to collect the rents due it as aforesaid, and becoming due it under said lease; that, by the terms of said lease, the plaintiff has a lien for and is entitled to collect out of said property by distraint, as well as by the enforcement of the lien reserved therefor in said deed of lease, rents and royalties for the amount not exceeding one year's rent at this time, to wit, three thousand

dollars in all, which rent is due and coming due, as set forth in said lease and in the allegations in the bill made; that, by reason of insolvency of said defendant company and the acts of said creditors, it is impossible for the said company to continue business or pay its indebtedness, and that any further efforts in that direction would result in a greater loss to complainant and the other creditors of said company; that the constable, by authority claimed under said attachment, has taken possession of certain property mentioned in Exhibit No. 3, and has removed and is removing a large part of it from the premises, and the mules especially were brought to Charleston, and are being kept at heavy expense, which expense will soon consume their value, and leave nothing for the creditors. The plaintiff further alleges that the defendants Noyes & Co. and the defendant Beane are making some claim to part of the property, and especially some of the rails attached to the freehold, the nature of which plaintiff had been unable to learn; and, under said claim, the last-named defendants were tearing up said track, and greatly injuring the freehold, upon all which property the plaintiff had a lien for its rent, except that part which becomes, by the terms of the lease, part of the freehold and the property of the complainant; that such removal is destructive to the value of the property as a coal plant, and in either event a great detriment to plaintiff; and it prays that said Noyes & Co. and Beane be required to make discovery, and say what is the nature of their claim. The plaintiff further alleges that said leasehold estate is a coal property, which requires constant care and attention to prevent injury by the accumulation of water and falling of slate, and a considerable part of the personal property, especially cars and mules, are necessary for the purpose of preventing great injury from the causes aforesaid, and, by the removal thereof and the lack of same, irreparable injury is being caused to the freehold estate; and it prayed the appointment of a receiver to take possession and charge of the assets and business of said defendant corporation, and safely keep the same until disposed of by the order of the court, and to care for and preserve the plant of the said defendant company from injury, from neglect or other cause, and that a speedy sale might be made of said prop-

erty, and that the cause be referred to a commissioner to ascertain and report an account, showing the assets and indebtedness of said company, to whom said indebtedness is due, and how much to each creditor, and the liens and priorities of the defendant company; that the creditors be convened before said commissioner, and required to present their claims and have the same adjudicated; that plaintiff's claim may be decreed to be a first lien upon the property of said company, and that the same be enforced; that the defendants be enjoined from further interfering with the property of the said defendant on said leased premises, or removed therefrom within thirty days next preceding that date, and from otherwise interfering with said property; and that those defendants having any portion thereof in their possession may be required forthwith to deliver the same up to said receiver.

As we have seen, an injunction was awarded on the 8th of March, 1895, and a receiver appointed in pursuance of the prayer of the bill; and on the same day, by consent of the complainant and the defendant the Ballard & Welch Coal Company, the cause was referred to Joseph Ruffner, to report upon the matters above stated. The commissioner returned his report on the 2d of July, 1895, which was excepted to by the plaintiff; and on the 27th of August, 1895, the defendant G. L. Welch demurred to the plaintiff's bill, which demurrer was overruled; and thereupon he tendered an answer purporting to be in behalf of himself and all the stockholders of the Ballard & Welch Coal Company similarly situated, and on behalf of said company, to the filing of which answer the plaintiff objected, which objection was sustained by the court, and said answer was not allowed to be filed, and the defendant G. L. Welch objected and excepted; and thereupon, after tendering the answer aforesaid, the said Welch moved to discharge the special receiver appointed in the cause, which motion the court overruled, and said Welch again objected and excepted; and thereupon the court proceeded to decree what property of the defendant company was subject to sale, and the amount and priorities of the liens thereon, in whose favor they existed, and provide that, unless the Ballard & Welch Coal Company, or some one for it, should within thirty days pay to its creditors the

several amounts therein specified, and the costs of the suit, then special commissioners therein named should proceed to sell said leasehold estate and improvements and loose personal property at public auction, upon the terms and within the manner therein specified; and from this decree the said G. L. Welch, acting on his own behalf, and on behalf of all other stockholders similarly situated, and on behalf of the defendant the Ballard & Welch Coal Company, obtained this appeal.

The errors assigned and relied upon by the appellant are as follows: (1) Granting the injunction; (2) appointing the receiver; (3) overruling petitioner's demurrer; (4) refusing to allow said answer to be filed; (5) overruling motion to discharge receiver; (6) in entering a decree on the commissioner's report before the term next after the term at which the same was filed, thereby depriving defendants of their right to exception secured by section 7, chapter 8, Acts 1895; (7) decreeing the liability and payment of accruing royalty under the lease filed with the bill, after granting the injunction to the complainant lessor.

Did the court err in overruling the defendant's demurrer? Now, the effect of the demurrer was to admit the allegations of the bill which were properly pleaded to be true; and, looking at the allegations of the bill which are hereinbefore set forth, we must conclude that the facts therein stated are sufficient, if true, to entitle the plaintiff to equitable relief. It alleges the existence of its large claims for royalty against the defendant corporation; that the same is due and unpaid; that the corporation is insolvent; and that various creditors are not only seizing the personalty of the corporation to satisfy their debts, but are actually tearing up the iron rails from the railroad tracks leading to the mines, and dismantling the property of the wire ropes and various appliances used in the daily operations at the mines. It is true that this Court held in the case of *Ruffner* v. *Mairs*, 33 W. Va. 655 (11 S. E. 5), Syl. point 1, that "a court of equity should exercise extreme caution in the appointment of receivers on *ex parte* applications, and be careful that a proper case is presented before adopting this extraordinary procedure; and it should not be done without notice to the party whose property is

to be affected, except in cases of the greatest emergency, demanding the immediate interference of the court.'' In this case no answer was attempted to be filed by the defendant Welch before the order was made appointing a receiver. The allegations of the bill sworn to by the attorney for the defendant company present such a state of facts as would authorize the appointment of a receiver. They have already been detailed, and it is useless to repeat them here. It is true, the plaintiff had reserved on the face of the lease to G. L. Welch, the right, if any of the rents or royalties should remain due and unpaid for sixty days after the same were payable as therein provided, to distrain, by landlord's warrant, not only all personal property contemplated by the laws of West Virginia, but also all the improvements that might have been put upon said land and the leasehold created by such lease, which royalties were made a first lien and charge upon the leasehold estate, and upon all buildings and improvements erected thereon by said lessee, and upon all the property of said lessee upon said demised premises, which lien, in case of default in payment of rents for the period of sixty days, might be enforced in any court having jurisdiction thereof. It appears by the allegations of the bill that the defendant company was insolvent; that its personal property was being seized and removed from the property under attachments, and the property was being dismantled of its various equipments and appliances as a coal property, and immediate action was required on the part of the plaintiff by the assertion of his liens, and the appointment of a receiver was necessary to prevent the property of the defendant from being seized and scattered, and the plaintiff's remedy for his rent defeated. No answer was filed by the defendant company, although it appears that due notice of the motion to appoint a·receiver had been given said company; but, on the contrary, the defendant the Ballard & Welch Coal Company appeared and consented that the cause be referred to a commissioner to ascertain and report and account the assets and liabilities of the defendant company, the liens against the same, and their priorities.

The defendant G. L. Welch tendered an answer on his own behalf, and on behalf of all other stockholders of said

company similarly situated, and on behalf of said company, which was rejected; and this action of the court is claimed by the appellant to have been erroneous. Did the court err in rejecting the said answer? The defendant G. L. Welch does not appear to have been authorized in any manner to answer for the Ballard & Welch Coal Cempany, and, besides, said company could only answer, if it was disposed so to do, under its corporate seal. See 1 Bart. Ch. Prac. 174; Story, Eq. Pl. § 235. In the case of *Park* v. *Petroleum Co.* 25 W. Va. 108, it was held that "a corporation must defend a suit brought against it in its corporate name; and a purchaser of stock will not be permitted to do so unless the corporation has refused to defend." Johnson President, in delivering the opinion of the court, says, on page 111: "It is well settled, from the very nature of a private business corporation, or indeed of any corporation, the stockholders are not the private and joint owners of its property. The corporation is the real, though artificial, person substituted for the natural person, who procured its creation and had pecuniary interests in it, in which all its property is invested, and by which it is controlled, managed, and disposed of. It must purchase, hold, grant, sell, and convey the corporate property, and do business, sue and be sued, plead and be impleaded, for the corporate purposes, by its corporate name. The corporation must transact its business in a certain way, and by its regularly appointed officers and agents, whose acts are those of the corporation only as they are within the powers and purposes of the corporation." In the case of *Bronson* v. *Railroad Co.*, 2 Wall. 283, Syl. point 1, it was held that "stockholders of a corporation cannot be regarded as answerable for the corporation itself; in a special case, however, where there is an allegation that the directors fraudulently refused to attend to the interests of the corporation, a court of equity will, in its discretion, allow a stockholder to become a party defendant, for the purpose of protecting from unfounded and illegal claims against the company his own interest and the interest of such other stockholders as choose to join him in the defense." Mr. Justice Nelson, in delivering the opinion of the court, on page 302 says: "A further objection to the practice of permitting a party to appear and answer in the name of the corporation is the

inequality that would exist between the parties to the litigation. The corporation not being before the court, it would not be bound by any order or decree rendered against it, nor by any admissions made in the answer, or stipulations that might be entered into by the parties or their counsel. * * * It is insisted, however, that the directors of this company refuse to appear and defend the bill filed against them, and for the fraudulent purpose of sacrificing the interest of the stockholders; and hence the necessity, as well as the propriety and justice, of permitting the defence by a stockholder in their name. Undoubtedly, in the case supposed it would be a reproach to the law, and especially in a court of equity, if the stockholders were remediless. But in such a case the court, in its discretion, will permit a stockholder to become a party defendant for the purpose of protecting his own interest against unfounded or illegal claims against the company; and he will also be permitted to appear on behalf of other stockholders who may desire to join him in the defense. But this defense is independent of the company and its directors, and the stockholder becomes a real and substantial party to the extent of his own interest and of those who may join him." See, also, 4 Thomp. Corp. § 4478, where it is said: "So, the general rule is that the shareholders will not be permitted in a suit in equity against a corporation to appear and answer the bill for the company, since the company would not be bound by any order or decree rendered against it founded on the admissions of such an answer or upon any stipulations which such parties might undertake to make for it." In section 4476 the same author says: "We have already seen that the individual stockholder is not, by reason of being a stockholder, a part owner of the property of the corporation, or entitled to act for it as its agent, but that he stands as a stranger towards it, and may sue it and be sued by it, and deal with it at arm's length."

It is contended by the counsel for the appellant that a receiver should not be appointed when the legal remedy is adequate,—citing High, Rec. § 403, *etc.*; also, 20 Am. & Eng. Enc. Law, p. 18, *etc.* In the first citation, High, in speaking of judgment creditors, says: "The plaintiff must have fully and completely exhausted his remedy at

law for the collection of his judgment before he is entitled to a receiver in equity." And it is said on page 20 of the 20 American & English Encyclopædia of Law that "the power to appoint a receiver is of high and unusual character, and it must be a strong case which will justify this ultimate resort to a court of equity; nor is the power ever exercised where it is likely to produce irreparable injustice or injury to private rights, or where there exists any other safe or expedient remedy." On the next page, however, it is said: "In order to obtain the appointment of a receiver, the plaintiff must show—first, either that he has a clear right to the property itself, or that he has some lien upon it, or that the property constitutes a special fund to which he has a right to resort for the satisfaction of his claim; and, secondly, that the possession of the property by the defendant was obtained by fraud, or that the property itself or the income arising from it is in danger of loss from the neglect, waste, misconduct, or insolvency of the defendant." In the case we are considering, it appears that several of these requirements exist. The plaintiff has a lien upon the property. It has a right to resort to the property for satisfaction; and, again, it appears that the property was in danger of loss. So, again, on page 11 of the same volume of the Encyclopædia of Law, it is said: "The purpose of a receiver's appointment is the protection of the subject of litigation. Receivership is one of those remedial agencies devised originally in order to preserve the fund or thing in question from removal beyond the jurisdiction, or from spoliation, waste, or deterioration pending the litigation, so that it might be appropriated as the final decree should appoint. By means of the appointment of a receiver, a court of equity takes possession of the property which is the subject of the suit, preserves it from waste and destruction, secures and collects the proceeds or profits, and ultimately disposes of them, according to the rights and priorities of those entitled." In the case under consideration, the facts alleged in the bill, and sworn to, made such a case as would entitle the plaintiff to the appointment of a receiver, to take possession of the property which was being seized and scattered by the creditors of the defendant corporation. The plaintiff, under his contract with the de-

fendant Welch, was entitled to the first lien on this property, and, as we think, had the right to the appointment of a receiver to prevent the same from being scattered and dissipated by creditors who had acquired subsequent liens, by attachment and otherwise. The defendant company, being unable to satisfy these subsequent liens, made no opposition to the appointment of a receiver at the instance of the plaintiff, and has made no motion to discharge the receiver. Recognizing the fact that it was insolvent and unable to to meet its liabilities, it consented to a reference to a commissioner to ascertain the amount and priorities of the liens against it.

Our statute (Code, c. 133, s. 28) provides that "a court of equity may, in any proper case pending therein in which the property of a corporation, firm, or person is involved, and there is danger of the loss of the misappropriation of the same, or a material part thereof, appoint a special receiver of such property or of the rents, issues and profits thereof or both, who shall give bond with good security to be approved by the court, * * * but no such receiver shall be appointed of any real estate or of the rents, issues or profits thereof until reasonable notice of the application therefor has been given to the owner or tenant thereof." Upon the facts stated in the bill, in pursuance of the requirements of this statute, the defendant corporation thought it advisable to make no defense under the circumstances. The defendant Welch, however, being dissatisfied with the course pursued by the defendant company, sought to file an answer for it, without in any manner being authorized so to do, which, as we have seen, he could not do under the circumstances of this case. Where a corporation is sued, it would never do to allow the individual stockholders to make separate defenses, for the reason, as suggested by the appellees, that every stockholder might have a different view as to what course should be taken. A corporation acts through its board of directors, and the directors in this instance seem to have given the defendant Welch no authority to appear and answer for them or for the company. Defendant Welch, in the answer he proposed to file, claims that Ballard, the president, neglected his duty as such, in failing to answer the bill. He does not dispute the plaintiff's claim for royalty

set up in its bill, except that he claims that royalty should not be allowed during the continuance of the injunction awarded in the cause. He denies that the company was insolvent, and says the company could and would have met its obligation without serious difficulty but for the fact that these proceedings were instituted, and for the further reason that Ballard became president, treasurer, and salesman of the defendant company, and, as such, sold coal to the amount of four thousand one hundred and two dollars and fifty cents, which he has made no return for, and he prays that said Ballard be made a party defendant, and required to answer and account for said funds. These allegations of the answer tendered by the defendant Welch, as it seems to me, have a tendency to introduce new and distinct matters which were not embraced in the original bill, and to create issues which were not contemplated by the original bill, and are not proper subjects for a cross bill. Barton in his Chancery Practice (volume 1, p. 301), in speaking of cross bills, says: "It should not introduce new and distinct matter, not embraced in the original bill, and it should not make new parties; for as to such matters it is an original bill, and the new matter cannot properly be examined at the hearing of the first suit." So, in the case under consideration, it would be improper to require the plaintiff in the original suit to delay his proceedings until the matter suggested by the defendant Welch's answer could be settled and adjusted between him as an individual stockholder and the treasurer of his company, who, as he claims, has been guilty of fraud and unfairness in collecting the proceeds of coal, and accounting for the same to the defendant company; and, as we think, the circuit court committed no error in rejecting the answer tendered by said defendant Welch.

The sixth assignment of error is claimed to have been in entering a decree on the commissioners report before the term next after the term at which the same was filed, thereby depriving defendants of their right to exception secured by section 7, c. 8, Acts 1895. The question raised by this exception was presented to this Court in the case of *Findley* v. *Smith* (decided Nov., 1896) 26 S. E. 370; and in point 5 of the syllabus in that case it was held that, if a decree was entered before the time of filing exceptions ex-

pired, it was at the risk of a party excepting and showing error within the time given by statute. In this case, however, the defendant has, by expection to said report or otherwise, shown no error to his prejudice therein, and cannot be heard to complain. The decree complained of is therefore affirmed, with costs and damages.

BRANNON, JUDGE: (*concurring*).

I do not deny the point so strenuously urged at the bar, and properly urged, that receiverships ought to be resorted to only in plain and extreme cases, where no other remedy is available, and the necessity of a receivership is manifest. Receivership is a very drastic and ruinous remedy. It destroys at one fell blow, in nine cases out of ten, the firm or corporation subjected to it. I hold decided ground under this head, but I assent to this decision for two reasons: *First.* This is not the case of a pure receivership, where the appointment of a receiver is the direct and primary object; but it is the case where the plaintiff had a lien reserved in his lease, and had the right to file a bill to enforce it, and the appointment of a receiver is merely incidental to the main relief. It is easier to justify an appointment of a receiver to save property pending suit to enforce a fixed lien than where it is not a suit to enforce a lien. It is then only a prudent step to save the lienor's security to answer his decree. *Second.* I do not think that Welch has a right to make the defence he seeks. The corporation did not resist the case.

*Affirmed.*