# CHARLESTON.

F. B. PARRIOTT *v.* EDGEWOOD COAL COMPANY *et als.*

Submitted April 18, 1922. Decided April 25, 1922.

1.  LIMITATION OF ACTIONS — *Whether the Limitation Statute Ceases to Run on a Claim Against a Corporation After its Dissolution Not Decided.*

    If a claim against a corporation is not barred at the time of its dissolution, the statute ceases to run and is not there-

after available to the corporation or stockholders.    Mooted but not decided.    (p. 48).

2.    SAME—*Stockholders of Dissolved Corporation May Interpose Statute Against one Seeking to Share Assets in the Hands of Liquidating Trustees.*

While generally the plea of the statute of limitations is personal to the debtor or his privies in estate, as heirs, devisees, vendees or mortgagees, nevertheless in the case of a dissolved corporation, and where the assets have been placed in the hands of liquidating trustees, a stockholder may interpose the statute or any other defense against the claim of a creditor or other person seeking to participate in the distribution of the assets of the corporation.    (p. 49).

Appeal from Circuit Court, Marshall County.

Suit by F. B. Parriott against the Edgewood Coal Company and others.  From a decree in favor of the defendants, the plaintiff appeals.

*Reversed in part. Affirmed in part.*

*James T. Miller* and *Jas. D. Parriott,* for appellant.

*T. S. Riley, W. A. McGlumphy* and *C. A. Showacre,* for appellees.

MILLER, JUDGE:

The defendant company, by deed of June 21, 1915, sold and conveyed to W. J. Bertram, Frank Gable, Boyd E. Warren, John G. Booth, W. T. Hughes and W. M. Dunlap all its coal lands, consisting of 764.91 acres, and mining rights with equipment, at the price of $90.00 per acre, $15,000.00 of which was paid down, and the residue, represented by the notes of the purchasers apportioned between them according to their individual interests, except the note of W. T. Hughes for $11.476.65 for the one-sixth interest conveyed to him, was secured by a deed of trust to T. S. Riley, trustee, upon the undivided interest of the grantors in the property conveyed, the notes falling due in one, two and three years with interest.

Shortly after the sale of the property the stockholders in general meeting resolved to surrender their charter to the State, and the corporation was thereupon dissolved; and by the same resolution W. D. Reed, C. E. Hutchinson, who has

been president, and J. W. Garvin, stockholders, were appointed trustees to take charge of and administer the assets, which trust was accepted by them, and the notes, etc., were turned over to them.

The trustees were engaged in the administration of the trust when, on March 30, 1917, the plaintiff, who was not at the time of the dissolution a stockholder or creditor so far as the books of the corporation disclosed, brought the present suit, claiming to be a holder of sixty shares of the capital stock, but by what right or title he did not allege. The answers deny plaintiff's ownership of these shares, and we find no replication thereto by Parriott; and the printed record shows no proof of such ownership except certain certificates of stock with assignment by W. J. Dieringer to one Hicks and by Hicks to Parriott on October 26, 1916, purporting to be exhibits with the deposition of Parriott. But we find no such deposition; and the exhibits in the absence of the deposition would amount to nothing more than fugitive papers. The question is not so important unless involved in the right of Parriott as an alleged stockholder to appeal and to interpose the statute of limitations to the debts decreed in favor of the appellees Hutchinson and Phillips. However, as counsel for the appellees do not seem to contest appellant's rights as a stockholder, we may treat it as conceded that he is a stockholder for the purposes of maintaining this suit and all correlative rights pertaining to a stockholder.

After the case was matured for hearing on pleadings and proofs, on October 31, 1918, the court decreed that Parriott was not entitled to share in the distribution of the assets of the defendant company until the indebtedness of his remote assignee Dieringer was satisfied and paid, and that all the other grounds for relief alleged against the trustees respecting the notes of Warren, Booth and Dunlap, and that of W. T. Hughes and Thomas Long, were unfounded and should be denied, and referred the cause to a commissioner to ascertain and report: (1) what, if anything, was due from Dieringer to the Edgewood Coal Company which was chargeable against his distributive share of the assets of the company represented by the stock held by him at the time of the disso-

lution of the corporation; (2) what debts were due from the corporation to C. E. Hutchinson and J. L. Phillips; (3) to settle the accounts of Garvin, Reed and Hutchinson; (4) and any other matter that any party might deem pertinent or that the commissioner might properly require.

The commissioner, in compliance with this order, reported: (1) Due from Dieringer to the company $2,594.60, made up of a note of $500.00, indorsed by Dunlap, and turned over by him to the trustees with ten shares of the stock held as collateral, in part payment by him of the purchase money of the property, and $1,200.00, admitted by Dieringer to Hutchinson and Phillips, as they testified, to be due from him as manager of the company for coal and other property sold and appropriated by him; (2) That the coal company was indebted to C. E. Hutchinson in the sum of $1,178.89, and to Phillips in the sum of $1,326.25, for principal and interest on money advanced by them respectively for operating expenses while the property was being operated under the management of Dieringer and before the sale thereof in June, 1915; (3) That Garvin, Reed and Hutchinson, the trustees, had in their hands for distribution the sum of $12,372.41.

To this report Parriott, plaintiff and appellant, filed three exceptions: First, that there was allowed the coal company $1,200,00 with interest included in the finding of $2,598.66; Second, that he found in favor of Hutchinson $1,178.89; Third, that he found $1,326.25 in favor of Phillips. These several exceptions were on the final decree appealed from overruled; and the sums reported in favor of Hutchinson and Phillips with interest were decreed to them respectively; and it was also decreed that the sum of $2,598.66, then amounting to $2,733.00, should be retained by the trustees aforesaid out of the distributive share of Dieringer, as stipulated, and distributed with the net assets pro rata to the stockholders or their assigns.

But three errors are assigned and relied on by Parriott for reversal. The first is that there was improperly included in the decree in favor of the coal company against Dieringer the sum of $1,200.00 with interest. The second is that it was error to decree in favor of Hutchinson and Phillips the sev-

eral sums decreed in their favor. Both these errors, covered
also by exceptions to the commissioner's report, were based
on the supposed lack of evidence to support them. As to the
$1,200.00 included in the decree against Dieringer, he ad-
mitted to Hutchinson and Phillips substantially, as they testi-
fied, that he owed the company about $1,200.00. The books
kept by him, which he says would have showed the amount
correctly, were destroyed by fire and could not be produced.
There is some evidence that he declared after the fire to some
one that he had books that would show his transactions while
he had charge of the property. The burden was on him to
show the true statement of the account. His contention is that
when he made the admission as to the $1,200.00 owed by him,
he was not taking into consideration what the company would
owe him for salary, etc. He agrees that no salary was agreed
upon. He operated the property for only about three months,
quite indifferently at that, and without success; and Hutchin-
son and Phillips showed in their accounts numerous checks
payable to Dieringer; and while Dieringer denies that any
of these went to him upon account of services rendered, he
fails to account for their use except by general denials, and
does not show their specific application. But whatever the
fact may be, the commissioner has found against him and in
favor of the company, largely perhaps on the evidence of his
admissions; but he failed to produce evidence to the con-
trary, and we can not say the report of the commissioner so
confirmed is erroneous. Besides this evidence we find that the
company through its counsel interposed the statute of limita-
tions to Dieringer's claim, which would seem to be a good
defense at the time the claim was asserted in the suit and at
the time of the dissolution of the corporation.

Respecting the claims of Hutchinson and Phillips, they
were fully sustained by the proof, by their canceled checks
exhibited with their testimony, and not controverted. There
was no lack of evidence to establish these claims against the
company.

But the third ground of error interposed against the decree
in favor of Hutchinson and Phillips, namely, that they were
each barred by the statute of limitations, presents a question

of more serious import. The proposition of appellant's counsel is that their claims were based on open accounts, right of action on which had accrued more than five years prior to the institution of this suit; and that upon their presentation counsel for the corporation and for the trustees were called upon by counsel for. plaintiff to say whether they intended to plead the bar of the statute, and being answered in the negative, they interposed the plea and also objected to the evidence and excepted to the report of the commissioner thereon. The record shows that the statute of five years had run against every item in the accounts, not only at the date of the institution of the present suit, but at the date of the dissolution of the corporation, which the record shows was August 11, 1915.

The law in some jurisdictions seems to be that after dissolution of a corporation the statute ceases to run, and that if a claim is not barred before dissolution, the statute is not available to the corporation or stockholder thereafter. 4 Cook on Corporations, (7th ed.) § 881, p. 3450, citing *Ludington* v. *Thompson*, 153 N. Y. 499, and *Downer* v. *Union Land Co.*, 103 Minn. 392. But whether this be the law of this jurisdiction or elsewhere we need not inquire for the purposes of this case, for here it appears that the accounts of Hutchinson and Phillips were wholly barred prior to the date of the dissolution.

The corporation and the trustees having declined to plead the statute, and the Commissioner on exception by appellant having in effect denied him the right to interpose the same, the question of prime importance is whether he has been denied any right of which he can properly complain either in the circuit court or here on appeal.

The general rule is that this plea is personal to the debtor and not available to strangers; but according to our decisions privies in estate, as heirs, devisees, vendees or mortgagees of the property may also avail themselves of the plea. The following cases, and others referred to therein, will be found to affirm the proposition and illustrate its application. *Werdenbaugh, Adm'r.* v. *Reid et al.,* 20 W. Va. 588; *Conrad* v. *Buck,* 21 W. Va. 396; *Shipley* v. *Pew,* 23 W. Va. 487; *McClaugherty* v. *Croft,* 43 W. Va. 270; *Welton* v. *Boggs,* 45 W. Va. 620, 625.

We have numerous cases holding that a stockholder may sue to redress his own grievances, and if the board of directors of a going concern refuse to protect the rights of the corporation or its stockholders, upon application, the stockholder, after refusal of the board of directors to act, may sue on behalf of himself and all other stockholders to vindicate his rights and the rights of the corporation. *Rathbone* v. *Parkersburg Gas Co.,* 31 W. Va. 798; *Wood* v. *Hotel Randolph Co.,* 65 W. Va. 721; *Kanawha Coal Co.* v. *Ballard,* 43 W. Va. 721; *Moore* v. *Schoppert,* 22 W. Va. 282, 290.

Here, however, we have the case, not of a going concern, but of a corporation long since dissolved and its assets in the hands of trustees created by resolution of the stockholders; and in such case a stockholder for cause may sue to protect and maintain his rights against trustees or officers and agents engaged in winding up the affairs of the corporation and the execution of the trust. *Williams* v. *Croft Hat & Notion Co.,* 82 W. Va. 549. The statute, section 57 of chapter 53, Code, gives stockholders representing not less than one-fifth in interest the right to sue for cause, to wind up the affairs of a corporation.

The exact point for decision here is whether one who like the plaintiff has acquired his right by assignment long after dissolution and disposed of the corporate property has a right to sue the corporation, its trustees and others, and therein, upon settlement of the accounts of the trustees, call upon the corporation or the trustees to interpose the statute against the claims of creditors barred at the time of the dissolution. If in this case Dieringer, the original holder and owner of the stock, at the time of the dissolution could have interposed the statute against the claims of Hutchinson and Phillips, we can perceive no good reason why Parriott, his assignee, standing in his shoes, would not have the right to do so. After the sale of the property and the dissolution, and the placing of the funds of the corporation in the hands of trustees, the only beneficiaries thereof were the creditors and stockholders. The question so far as we know has never been decided here or in Virginia; but in 2 Cook on Corporations, (7th ed.), § 641, p. 1783, we find it stated in the text that stockholders may

insist on the application of the statute of limitations in so far as it is a bar to the claim of corporate creditors upon the assets. The rule is apparently based upon two cases cited in the note, namely, *Johnston* v. *Talley,* 60 Ga. 540, and *Crutchfield* v. *Mutual &c. Co.,* (Tenn.), 2 S. W. Rep. 658. In the same connection the author says: ''The statute of limitations does not run as against the estate of dissolved corporation.'' We find also that Mr. Thompson in his work on Corporations, and predicated on the two cases cited by Mr. Cook, says. ''But stockholders may insist on the application of the statute of limitations to the claims of creditors on distribution after dissolution.'' 5 Thompson on Corporations, (2nd ed.), §6578, p. 1373.

Here one of the creditors whose debt is attacked was also president of the corporation at the time of its dissolution, and was and is one of the trustees appointed and in charge of the assets. It would seem that there ought to be some one clothed with legal right and authority to protect the rights of stockholders and others against debts doubtful or barred by the statute; and who would or could do this if not a stockholder? In the Georgia case Judge Bleckley pertinently concludes: ''The right of urging the defenses would pass to whomsoever would take the assets as the result of defending successfully, to creditors in competing among themselves, and to stockholders in competing with creditors. This seems to us to be the reason of the matter; and the reason of it is the law of it, there being no other authority on the subject that we are aware of.''

We are of opinion therefore that the court erred in overruling appellant's exceptions to the commissioner's report allowing the debts of Hutchinson and Phillips and in decreeing the amounts thereof in their favor; and that the decree in so far as it decrees said debts as liabilities and claims on the assets of the Edgewood Coal Company in the hands of the said trustees distributed or to be distributed, should be reversed, set aside and annulled, and that the exceptions of the appellant relating thereto should be sustained, but that in all other respects said decree should be affirmed.

<em>Reversed in part.    Affirmed in part.</em>