## CHARLESTON.

LYNCHBURG COLLIERY COMPANY v. GAULEY AND EASTERN
RAILWAY COMPANY. ·

Submitted October 10, 1922.        Decided October 24, 1922.

1.  CORPORATIONS—*Statute Held to Extend Life of Dissolved Corporation for Purposes of Suits.*

    Besides the jurisdiction in equity to wind up the affairs of a dissolved corporation, given by section 59 of chapter 53 of the Code, said section properly construed extends the life of a corporation for all purposes of suits, at law or in equity, to vindicate the rights of third persons against it respecting its contracts or torts. The ruling on this subject in *Stiles* v. *Laurel Fork Oil & Coal Company*, 47 W. Va. 838, interpreted. (p. 145).

2.  APPEAL AND ERROR—*Questions Not Presented on Face of Summons or Other Process, Nor on Face of Return, Not Properly Certified to Supreme Court of Appeals by Circuit Court.*

    Questions not presented on the face of a summons or other process, nor on the face of the return thereon, are not properly certified to us by the circuit court under section 1 of chapter 135 of the Code. (p. 148).

Certified Questions from Circuit Court, Fayette County.

Action by the Lynchburg Colliery Company against the Gauley & Eastern Railway Company. On certified questions.

*Affirmed.*

*Hubard & Bacon,* for plaintiff.
*Leroy Allebach,* and *W. N. King,* for defendant.

MILLER, JUDGE:

The action in this case is for damages alleged to have been sustained by plaintiff about March 13, 1918, to its lands, houses and other property situated upon and along the banks of the Gauley River in Fayette County, from the alleged unlawful conduct of the defendant when extending its line of railroad along the opposite side or bank of said river, in the months of July, August and September 1917, by blasting and

shooting from the cliffs along the said line of railroad and into the channel of said river large quantities of rock and other materials, so as to obstruct and change the natural flow of the waters therein, and in flood times causing the water in said river to be dammed up and to be cast over, upon and against plaintiff's land, houses and other property, and to wash the same away and to permanently damage and injure the same in the various ways particularly set out in the declaration, laying its damages at $50,000.00

In the court below the defendant by special appearance suggested its dissolution and the surrender of its charter prior to the date of said suit, and moved the court to quash the original summons sued out of the clerk's office on June 4, 1921, served upon one Crider, a depot agent, on the same day, and the return thereto, and also the alias summons sued out on October 22, 1921, and served upon Leroy Allebach, the person appointed by said corporation pursuant to law to accept service of process for it, and the return of service thereon, upon the ground that the persons upon whom such summons had been served, since the dissolution of the corporation and the surrender of its charter had ceased to be agents and attorney in fact to accept service of process for it, wherefore said writs and the returns thereon should be quashed.

And the said Allebach, as the record shows, also asked leave to file a special plea in writing in abatement of said suit, setting up the dissolution of said corporation and the surrender of its charter in the manner and form required by law, and averring that since said dissolution and surrender of its charter, defendant's property and assets had all been sold and the proceeds, after payment of all its known debts and liabilities, had been distributed to its stockholders.

The circuit court overruled the motions to quash the writs and returns and to dismiss the action, and sustained plaintiff's objection to the filing of said special plea, and has certified to us the questions presented thereby and the correctness of its rulings thereon.

It is conceded that at common law a corporation becomes

defunct by the expiration of its charter or on the voluntary dissolution thereof and surrender of its charter and can not be sued at law. One of our decisions, *Stiles* v. *Laurel Fork Oil & Coal Co.,* 47 W. Va. 838, seems to hold that, notwithstanding section 59, chapter 53 of our Code, suits at law can not now be maintained against such defunct corporation, but that relief can be obtained only in equity, in the winding up of the affairs of the corporation, as provided in said statute. Said section provides: "When a corporation shall expire or be dissolved, its property and assets shall, under the order and direction of the board of directors then in office, or of the receiver or receivers appointed for the purpose by such circuit court as is mentioned in the fifty-seventh section of this chapter, be subject to the payment of the liabilities of the corporation, and the expenses of winding up its affairs; and the surplus, if any, then remaining, to distribution among the stockholders according to their respective interests. And suits may be brought, continued or *defended,* and the property, real or personal, of the corporation be conveyed or transferred under the common seal or otherwise, and *all lawful acts be done, in the corporate name, in like manner and with like effect as before such dissolution or expiration;* but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation, converting its property and assets into money, prosecuting and protecting its rights, *enforcing its liabilities,* and paying over and distributing its property and assets, or the proceeds thereof, to those entitled thereto."

The main object of the suit in the case of *Stiles* v. *Laurel Fork Oil & Coal Company* was for winding up the affairs of the defunct corporation. In that suit plaintiff appears to have sued out an attachment and levied it upon lands formerly owned by the corporation. The principal question involved was whether, in such suit brought for the equal benefit of creditors, under said section 59, chapter 53 of the Code, such an ancilliary attachment could be maintained. Judge BRANNON, on page 847 of that case says: "But I cannot see how a remedy given simply for closing up a corpora-

tion (a remedy for the equal benefit of all creditors) can be made the instrument, by means of an ancilliary attachment, of giving one creditor preference over others'' but adds; ''However, the matter is not material in this case, though argued, because there is but one creditor.'' He was the attaching creditor, and as the rights of stockholders was subordinate to those of creditors, no error prejudicial to them was committed.

One of the points in the syllabus in the Stiles case is, ''There can be no suit against an expired domestic corporation, except one in equity, as provided in sections 57, 59, chapter 53, Code, to wind up its affairs for the benefit of creditors and stockholders.'' Such was the main purpose of that suit. The court did not have before it a suit at law for damages for a wrong, as in this case. The real point for adjudication in that case was whether in such a suit, proceedings by attachment could be employed to give one creditor preference over another. And in view of the language of said section 59 of chapter 53, we must conclude that it was not intended to deny to a claimant the right after dissolution or expiration by limitation of the charter of a corporation, to go into a court of law to vindicate his right to damages, the result of a wrong of the dissolved corporation. If so, all such rights would be extinguished by the voluntary or involuntary action of a corporation. The very object of our statute, it seems to us, was to do away with the unreasonable and inequitable rule of the common law; and to give it the narrow construction now contended for, and that erroneously imputed to *Stiles* v. *Laurel Fork Oil & Coal Company,* would be to rob it of one of the most important objects sought to be accomplished thereby. The words italicised in quoting the statute seem to leave no escape from the proposition that under it suits may be ''defended'' and suits brought for ''enforcing its liabilities'', all for the purpose of finally winding up the affairs of the corporation, by paying its debts and liabilities and distributing its net assets to the stockholders. If such suits are not thus authorized, those to whom rights and rights of action have accrued would be deprived of im-

portant legal rights of person and property without the intervention of a jury or legal process. We think, in view of the manifest object of the statute, we must give it this comprehensive construction. The statute is remedial in nature and should be given the liberal construction generally applied to such enactments.

In *Billmyer Lumber Co.* v. *Merchants Coal Co.*, 66 W. Va. 696, the suit was brought against a foreign corporation before its right to do business in the state had been taken away. It was held in that case that notwithstanding the revocation of such authority afterwards, the suit might be prosecued to judgment, as effectually in all respects as if defendant's right to do business in the state had not ceased, notwithstanding the provisions of chapter 53 of the Code, relating to suits to wind up the affairs of such corporations; that these provisions of the statute are not exclusive remedies and do not of themselves take away the right to proceed to judgment and execution. And in conclusion it was said in that case, "that the remedies in equity, given to creditors of corporations by the provisions of chapter 53 of the Code are not exclusive, and do not prevent recovery of judgments at law against corporations after expiration of their charters; and that the circuit court did not lose the jurisdiction over the defendant which had attached before the revocation of its right to do business in this state."

. The old rule of the common law has been changed in most, if not all, of the states; and under most of them a corporation may be made liable for torts committed before or after the expiration of its charter. 14A C. J. 1151, section 3804. And this authority says this rule is applied generally when the statute, as in this state, continues the existence of corporations for the purpose of winding up and settling their affairs. *Id.*, sections 3817, 3894, 3903, and notes. See also, *City of New York* v. *New York and South Brooklyn Ferry & Steam Transportation Co.*, 16 A. L. R. 1059.

The remaining question sought to be raised by motions to quash the process and returns of service thereon, is whether jurisdiction was acquired by process upon the station agent

and the attorney in fact appointed to accept service of process and upon whom process might be served prior to the dissolution. The authorities hold that when an action or suit may be brought against a corporation after its dissolution, process may be served upon the same persons upon whom it might have been served before dissolution. *Hould* v. *Squire & Co.*, 81 N. J. L. 103; 14A C. J. 1203, section 3898. But we can not upon certificate answer the questions presented by these motions to quash. The writs and returns are regular and sufficient on their faces. The legal effect and sufficiency of the service does not arise on the motions to quash. *Tyler* v. *Wetzel*, 85 W. Va. 378.

We conclude therefore that the rulings of the circuit court on the motions to quash the writs and returns thereon can not be raised, but that the court's ruling in rejecting the special plea tendered was correct and should be approved, and we will so certify.

*Affirmed.*