SOUTH PENN OIL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20785. Promulgated October 8, 1930.

*Oscar R. Ewing, Esq.,* and *Harold L. Smith, Esq.,* for the petitioner.

*J. A. Lyons, Esq.,* for the respondent.

1184

OPINION.

PHILLIPS: The constitutional question raised by the petitioner is controlled by *Henry Cappellini et al.*, 14 B. T. A. 1269, wherein we held that a transferee appealing to this Board under section 280 of

the Revenue Act of 1926 may not in such a proceeding question its constitutionality. See *Phillips* v. *Commissioner*, 42 Fed. (2d) 177.

Under the second assignment of error the petitioner attacks the right of the respondent to make the proposed assessment on the ground that section 280 of the 1926 Act does not clearly express the legislative intent to apply its provisions to a transferee who, like the petitioner, acquired assets of a taxpayer prior to the enactment of the statute. Several decisions of the United States Supreme Court are cited to illustrate the rule of construction that Federal statutes are presumed to be prospective unless the language used in the act clearly expresses a contrary intention.

The provisions of section 280 bearing on the question are:

(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title' (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refund):

(1) The liability, at law or in equity, of a transferee of property of a tax-payer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period,—then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

Prior to enactment of the 1926 Act the Commissioner had no authority to make assessments against tranferees for taxes due the United States, his remedy for the collection of such liability being confined to court proceedings. The provisions of the 1926 Act did not increase the liability of transferees for taxes due from trans-ferrors; it merely gave the Commissioner a new remedy.

In its report on section 280 of the 1926 Act, the Senate Committee on Finance said:

There are a number of situations in which the assets of the taxpayer have, subsequent to the accrual of his tax liability, been disposed of in whole or in part with the result that the Government can not successfully distrain or otherwise collect the full amount of the tax originally returned or found due as a deficiency.

After setting forth numerous examples resulting in such situations, including instances where corporations dissolve and distribute

their assets to stockholders, and reviewing the remedies then existing for the collection of transferee liability, the committee said:

It is the purpose of the committee's amendment to provide for the enforcement of such liability to the Government by the procedure provided in the act for the enforcement of tax deficiencies. It is not proposed, however, to define or change existing liability. The section merely provides that if the liability of the transferee exists under other law then that is to be enforced according to the new procedure applicable to tax deficiencies.

It seems clear from these statements of the committee that it intended section 280 to apply to liabilities existing at the time of the passage of the Act as well as liabilities arising thereafter. This intention appears to be clearly expressed in section 280 of the Act. Subdivision (a) provides that a liability such as we have here " shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in tax imposed by this title." The Commissioner in proceeding under section 280 is not applying it retroactively, but is complying literally with the statute in that he is using it to enforce a liability existing at the time of its enactment. The law does not say that it shall be limited to transferee liabilities to arise *in futuro* and a reasonable reading of it shows that it was intended to apply to liabilities of transferees then in existence.

The remaining issue presents the question whether or not the proposed assessment is barred by the statute of limitations.

The instrument executed on December 20, 1920, for the year 1917 was signed by the petitioner as successor to the Development Co. and does not bear the Commissioner's signature. Lacking, as it does, the taxpayer's signature, the document is ineffective to extend the running of the statute. *Bamberg Cotton Mills*, 8 B. T. A. 1236; *Carnation Milk Products Co.*, 15 B. T. A. 556. The instruments dated November 4, 1925, for 1916 and 1917 taxes were not signed by the respondent though they were executed and transmitted to him in response to his written request. As they purport to extend the period of assessment to the same date as did other instruments already executed and outstanding they have been disregarded in our consideration of the case and we do not here presume to determine their validity.

The remaining instruments purport to extend the period for assessment against the taxpayers to December 31, 1925, and, if validly executed so as to be binding upon the taxpayers, our decision here must be for the respondent. Sec. 277 (a) (2), Revenue Act of 1924; Sec. 280 (b) (2), Revenue Act of 1926; *Joy Floral Co.*, 7 B. T. A. 800; *Wells Bros. Co.*, 16 B. T. A. 79; *Charles H. Stange* v. *United States*, 68 Ct. Cls. 395.

The taxpayers, formerly West Virginia corporations, were dissolved in September, 1917, prior to the expiration of the statutory limitation periods for assessment. All the instruments upon which

the respondent relies as extending the period for the assessment against the taxpayers purport to have been executed on behalf of the taxpayers by S. G. Hartman, who was vice president of the Development Co. and a director of both corporations at the time of their dissolution. He signed the instruments dated December 28, 1922, and May 9, 1925, as vice president, and the remainder, excepting the one dated February 5, 1924, which he executed without any designation of his official connection with the Development Co., as treasurer. It does not appear that he was ever treasurer of either of the taxpayers.

Section 59 of Chapter 53 of the Code of Laws of West Virginia reads as follows:

*Effect of such dissolution or expiration.* When a corporation shall expire or be dissolved, its property and assets shall, under the order and direction of the board of directors then in office, or of the receiver or receivers appointed for the purpose by such circuit court as is mentioned in the fifty-seventh section of this chapter, be subject to the payment of the liabilities of the corporation, and the expenses of winding up its affairs; and the surplus, if any, then remaining, to distribution among the stockholders according to their respective interests. And suits may be brought, continued or defended, the property, real or personal of the corporation be conveyed or transferred under the common seal or otherwise, and all lawful acts be done, in the corporate name, in like manner and with like effect as before such dissolution or expiration; but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation, converting its property and assets into money, prosecuting and protecting its rights, enforcing its liabilities, and paying over and distributing its property and assets, or the proceeds thereof, to those entitled thereto.

Statutes extending the life of a corporation have been liberally construed so as to extend rather than limit the corporate privileges. *Bewick* v. *Alpena Harbor Improvement Co.*, 39 Mich. 700; *Grussi* v. *Church*, 116 Ore. 336; 241 Pac. 66; *Stark Electric Railway Co.* v. *McGinty Contracting Co.*, 238 Fed. 657.

The West Virginia statute permits all lawful acts to be done in the corporate name in like manner and with like effect as before dissolution. Its affairs are to be administered by the board of directors then in office. It is our opinion that under such a statute the corporation and its directors are to act through officers " in like manner " as before dissolution. Those dealing with the corporation are entitled to rely upon the apparent authority of an officer acting for the corporation, if his acts are within the limitations set upon the corporation by the statute.

The courts of West Virginia have construed the statute to mean that a corporation, after voluntary or involuntary dissolution, remains a corporation in contemplation of law for the purpose of winding up and settling its affairs. *Billmeyer Lumber Co.* v. *Merchants Coal Co. of W. Va.*, 66 W. Va. 696; 66 S. E. 1073; *Lynchburg Colliery Co.* v. *Gauley & E. Ry. Co.*, 92 W. Va. 144; 114 S. E. 462; *Irons* v. *Croft Hat & Notion Co.*, 86 W. Va. 685; 104 S. E. 111. As

was said in the latter case, "After dissolution, the name of a corporation and its corporate powers still continue for such purposes." Under a similar statute of the State of New York, the court in *Security Trust Co. v. Pritchard*, 201 App. Div. 142; 194 N. Y. S. 486, held the corporation to be its own liquidator. The effect of the decisions of the courts of West Virginia construing the West Virginia statute, is the same. We do not therefore have a situation where the affairs of a dissolved corporation are in the hands of a liquidating trustee or trustees, but one where the existence of a corporation is continued with power to perform such acts as are necessary to liquidate its business.

In construing a similar statute of the State of New York we held in *Charles D. Jaffee et al.*, 17 B. T. A. 675, that the settlement by the directors of a dissolved corporation of its liability for taxes for years during which it was actively engaged in business was within the scope of their authority, and that certain consent agreements executed by an officer of the corporation, who was also a director, during the course of the liquidation of its affairs, before the statutory period of limitation for assessment expired, were binding upon the corporation. The statute under which the directors of the Development Co. were winding up its affairs is as broad as the New York law, and the same conclusion must be reached here. See *United States v. Kemp*, 12 Fed. (2d) 7. We affirm the action of the Commissioner in asserting liability for the 1917 tax of the Development Co. against the petitioner.

A different question arises with respect to the remaining taxes. When the instruments upon which the respondent relies as permitting the assessment were executed, the corporation was not only dissolved, but the statute of limitations on assessment and collection of such taxes had run. These instruments, if effective to bind the corporation, did not merely extend the time for collection of the tax, but waived a defense which might have been interposed to its collection. Their effect, if the contention of the respondent is to be upheld, was to permit the collection of an obligation which at the time of their execution was uncollectible. We are of the opinion that neither the directors nor an officer of the taxpayers had any such authority after the dissolution. The statute gives them power to act "so far only as shall be necessary or proper for * * * paying over its property and assets, or the proceeds thereof, to those entitled thereto." Any action on the part of the corporation or its officers tending to permit payment of an uncollectible liability diverts the assets from those entitled thereto and exceeds the statutory limitation on the authority granted. In *Parriott v. Edgewood Coal Co.*, 91 W. Va. 44; 112 S. E. 191, it was held that the trustees of a corporation in dissolution might be required to set up the statute of

limitations as a defense, and where they refused to do so a stockholder of the corporation might interpose the defense; citing 2 Cook on Corporations (7th ed.) 1783; 5 Thompson on Corporations (2d ed.) 1373; *Johnston* v. *Talley*, 60 Ga. 540; and *Crutchfield* v. *Mutual Gas Light Co.*, 2 S. W. 658.

We find also a decision of a Federal court which passes upon a case somewhat in point. In *Hammond* v. *Carthage Co.*, 34 Fed. (2d) 155, which was a receivership proceeding, the United States presented a claim for income taxes. The court held that the Government might rely upon the ostensible authority of a corporate officer to waive the period of limitations upon assessment of a tax where the period for assessment had not yet expired, but that after such period had expired express authority to execute a waiver must be shown. Taxpayers here are in a comparable position. So long as the period for assessment had not expired, it was a proper act in the liquidation of the corporate affairs for the officers to extend the statute, but when their acts go beyond this to reinstate a liability that has become barred of collection, they exceed the authority granted them to liquidate the affairs of the dissolved corporation. The statute having expired before their execution, the Government has suffered no damage by reason of the execution of these instruments and is in no position to rely upon a plea of estoppel. We are of the opinion that the instruments executed by an officer of the dissolved taxpayers after dissolution, and after the bar of the statute had become complete, are ineffective to remove the bar, that there is no tax due from the taxpayers for the period now under discussion, and conclude that, since the assessments of 1915 and 1916 taxes against the Development Co. and of 1917 taxes against the Drilling Co. were not made within the statutory period nor asserted against the petitioner within one year thereafter, there is no liability on the part of the petitioner.

Reviewed by the Board.

*Decision will be entered accordingly.*